Dear Mr. Donovan:
This office is in receipt of your opinion request directed to Attorney General Richard P. Ieyoub dated July 13, 1992. The request has been assigned to me for research and reply.
The following related issues are presented as stated in your request:
 (1) Can state funds be used to produce and mail letters to Louisiana residents if the letters will promote the Constitutional Convention and advocate its results? and
 (2) The Archives photographer for the Secretary of State has the necessary equipment and skills to produce a videotape of Governor Edwards speaking on the Constitutional Convention. This videotape will be provided to Louisiana television stations. Can this office utilize the photographer's services during his regular work hours, or in the alternative, can state funds be used to employ him during his non-working hours?
The constitution prohibits the use of public funds to promote or defeat any candidate or proposition. LSA-Const. Art. XI, § 4 states:
 "No public funds shall be used to urge any elector to vote for or against any candidate or proposition, or be appropriated to a candidate or political organization. This provision shall not prohibit the use of public funds for dissemination of factual information relative to a proposition appearing on an election ballot."
This constitutional provision and its application have been scrutinized in Godwin v. East Baton Rouge Parish, 372 So.2d 1060
(La.App. 1st Cir. 1979); writ den.; 373 So.2d 527 (La. 1979). The court examined LSA-Const. Art. XI, § 4 and concluded:
 ". . . [LSA-Const. Art. XI, § 4] was obviously intended to protect the public fisc by prohibiting expenditure of public funds for expressly proscribed purposes, namely, to promote or oppose any candidate for office, to promote or oppose the cause of any political organization, or to promote or oppose passage of any proposition submitted to the electorate. Additionally, the provision is designed to prevent public officials from using public funds to support or oppose candidates, parties or propositions." (Emphasis added).
The Election Code adopts verbatim the language of the constitutional provision in LSA-R.S. 18:1465, making the use of public funds for political purposes illegal. This office has previously issued opinions indicating that the dissemination of purely factual information via advertisement or publication may be lawfully paid with public funds. See Attorney General Opinion Number 89-418 (advertisements may be published concerning an upcoming tax election and paid for with public funds where the authority disseminates purely factual information); Attorney General Opinion Number 91-634 (review of letters concerning drainage proposition determined to be lawful).
However, the facts as you relate in your letter indicate the letters would "promote" the Constitutional Convention and "advocate" its results. A construction of this language would indicate the proposed letter would urge the electors to vote in favor of an amendment to the Constitution, which is clearly what the constitutional provision and statute seeks to prohibit.
There is a further prohibition against such printing within LSA-R.S. 43:31(D), which provides:
 "No funds appropriated for printing purposes or otherwise shall be used to urge any elector to vote for or against any candidate or proposition on an election ballot nor shall such funds be used to lobby for or against any proposition or matter having the effect of law being considered by the legislature or any local governing authority. This provision shall not prevent the normal dissemination of factual information relative to a proposition on any election ballot or a proposition or matter having the effect of law being considered by the legislature or any local governing authority."
Finally, there is a further restriction against advertisements being paid for with public funds contained in LSA-R.S. 43:111.1, which provides:
 "No public funds shall be used in whole or in part for the payment of the cost of any advertisement containing therein the name of any public official whether elected or appointed; provided, however, that the provisions of this section shall in no case be construed to apply to advertisements or notices required or authorized by law to be published or to any advertisements placed by any public agency or body authorized by law to advertise in the furtherance of its functions and duties." (Emphasis added).
There is a question as to whether the video constitutes an advertisement as defined by statute. This office has previously construed the term "advertisement" to mean a public notice which is usually published in the mass media or broadcast over the air. See Attorney General Opinion Number 83-57.
In the instant case, the type of video you mention will be distributed to the media for telecast. The Governor will appear in the video. Presumably, the content of the video will be similar to the content of the letters distributed to residents.
This office is of the opinion that such a presentation to be disseminated to the general public constitutes an advertisement. An elected official will be named in the video, in contradiction to the statute. Production costs, such as the utilization of an Archives photographer to film the video, may not be paid for with public funds. This conclusion is in accord with a previous opinion from this office, which concluded public funds could not be utilized to pay for an advertisement promoting the passage of a proposed constitutional amendment. See Attorney General Opinion Number 79-1191, a copy of which is enclosed.
We trust this interpretation of the law is helpful to you. Should you have further questions, please do not hesitate to contact our office.
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: KERRY L. KILPATRICK Assistant Attorney General
RPI/KLK/0109E